NOTICE

*Memorandum decisions of this court do not create legal precedent. See Alaska Appellate Rule 214(d). Accordingly, this memorandum decision may not be cited for any proposition of law or as an example of the proper resolution of any issue.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| CHARLES EGGENER, | ) | |
| | ) | Supreme Court No. S-13545 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-08-4371 CI |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND JUDGMENT* |
| JHYSHAIN WEE, | ) | |
| | ) | No. 1357 - March 12, 2010 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Jack Smith, Judge.

Appearances: Robert C. Erwin, Robert C. Erwin, LLC, Anchorage, for Appellant. Justin Eschbacher and Gary Eschbacher, Law Offices of G. R. Eschbacher, Anchorage, for Appellee.

Before: Carpeneti, Chief Justice, Fabe, Winfree, Christen, and Stowers, Justices.

## I. INTRODUCTION

After a five-day custody trial the court granted unmarried parents shared physical custody and temporary joint legal custody of their son. The mother then moved for enhanced child support and attorney's fees. The court found good cause to vary from the Alaska Rule of Civil Procedure 90.3(b) support formula, and (1) increased the

---

\*      Entered pursuant to Appellate Rule 214.

father's support obligation by $300 per month for childcare expenses and (2) ordered the father to pay for the cost of his son's health insurance and the first $5,000 of uncovered medical expenses. The court also awarded the mother partial, but substantial, attorney's fees. The father appeals. Because the court did not abuse its discretion by awarding enhanced child support or attorney's fees to the mother, we affirm its decisions.

## II.    FACTS AND PROCEEDINGS

Jhyshain Wee and Charles Eggener have never been married and have one child together, a son born in September 2004. The factual background of the parties' relationship and their custody dispute is set out in our related opinion also issued today.[1] Here the only pertinent facts involve the parties' relative financial situations and the post-trial motions regarding enhanced child support and attorney's fees.

Wee, who was born in 1968, works for the Internal Revenue Service, earning about $50,000 per year. In April 2008 Wee's net worth was about $350,000, but she claimed that figure was overstated because it included over $160,000 in investments held on behalf of her family. By January 2009 Wee's net worth, including her family investments, had decreased to about $185,000, due in part to "spen[ding] an incredible amount of financial resources in this court action." That figure, however, failed to account for Wee's equity in the residence she and Eggener shared. Later that month, when Wee moved for attorney's fees, her estimated net worth — including the money

---

[1]    *Wee v. Eggener*, ____ P.3d ___, Op. No. 6461 (Alaska, March 12, 2010). Wee separately appealed the trial court's custody rulings. Before oral argument in Eggener's appeal, we issued an order in Wee's appeal vacating the awards of shared physical and temporary joint legal custody to the extent they gave any custody rights to Eggener. Thus the child support order at issue in this appeal was effective until our order partially vacated the trial court's custody awards. As a result, neither our order nor the related opinion disposes of or renders moot the issues raised in this decision.

Eggener paid her for her share of the residence — was approximately $350,000.

Eggener, who was born in 1946, is a retired civil engineer and construction contractor. His 2007 adjusted gross income was just under $2 million, and his 2006 adjusted gross income was just under $1 million. Eggener estimated his future annual income would be about $450,000. Eggener's net worth (including retirement accounts) apparently approaches or exceeds $20 million.

After the trial court issued its custody decision, Wee moved for enhanced child support. First, she urged the court to calculate child support under Rule 90.3(a) (governing primary physical custody) instead of Rule 90.3(b) (governing shared physical custody). She alternatively requested the court to calculate child support under Rule 90.3(b) but to add $300 per month for childcare expenses, because "Eggener is in a better position to pay for [that] cost . . . ."[2] Additionally, "[g]iven the financial disparity" between Wee and Eggener, Wee urged that Eggener be required "to pay the uncovered costs of [their son's] healthcare . . . and also pay the full cost of [their son's] health insurance."[3]

The court granted Wee's motion for enhanced child support, "find[ing] good cause to vary from a Civil Rule 90.3(b) calculation given Mr. Eggener's extraordinary wealth . . . ." The court ordered Eggener to pay $300 per month beyond

---

[2] Before the custody trial Wee had been taking the child to a different childcare facility on Mondays "for financial reasons." The trial court, however, ordered that the parties use one facility.

[3] Alaska R. Civ. P. 90.3(d)(1) provides: "The court shall allocate equally the cost of [health] insurance between the parties unless the court orders otherwise for good cause." Similarly Alaska R. Civ. P. 90.3(d)(2) provides: "The court shall allocate equally between the parties the cost of reasonable health care expenses not covered by insurance unless the court orders otherwise for good cause."

the Rule 90.3(b) calculation, plus the cost of his son's health insurance and the first $5,000 of uncovered medical expenses (with the parties to contribute equally to any uncovered medical expenses beyond the first $5,000).

Wee also moved for an award of attorney's fees. Wee argued that she and Eggener were "not on a level playing field financially" and requested about $160,000 to cover her full attorney's fees. The court found an attorney's fees award was warranted based in part on the "vast financial disparity existing between the parties," ultimately awarding Wee approximately $120,000 in attorney's fees.

Eggener appeals from the trial court's child support and attorney's fees decisions. He argues the trial court abused its discretion by enhancing his child support obligation beyond the Rule 90.3(b) calculation and ordering him to bear the full cost of both the child's health insurance and the first $5,000 of uncovered medical expenses. He also argues that the trial court used the incorrect legal standard for awarding attorney's fees and otherwise abused its discretion by awarding Wee about $120,000 in attorney's fees.

## III. STANDARD OF REVIEW

We review child support awards for abuse of discretion,[4] reversing an award "when our review of the record leaves us with 'a definite and firm conviction based on the record as a whole that a mistake has been made.' "[5] We also will reverse

---

[4]    *McDonald v. Trihub*, 173 P.3d 416, 420 (Alaska 2007) (citing *Beaudoin v. Beaudoin*, 24 P.3d 523, 526 (Alaska 2001)).

[5]    *Koller v. Reft*, 71 P.3d 800, 804 (Alaska 2003) (quoting *Beaudoin*, 24 P.3d at 526).

an award if the trial court "applied an incorrect legal standard."[6]  Whether the trial court applied the correct legal standard in its child support calculation is a question of law we review de novo.[7]

Trial courts have broad discretion in awarding attorney's fees, and an award "will not be disturbed on appeal unless it is 'arbitrary, capricious, manifestly unreasonable, or stems from an improper motive.' "[8]  We review de novo the legal standard the trial court applied to determine attorney's fees.[9]

## IV.  DISCUSSION

### A.  Child Support

Rule 90.3 governs the award of child support.  The commentary to Rule 90.3 states that to promote consistency and proper calculation of children's needs, "the great majority of cases should" have child support awards under 90.3(a) or (b).[10]  But there are exceptions.

Rule 90.3(c)(1) provides that a "court may vary the child support award as calculated under the other provisions of this rule for good cause upon proof by clear and convincing evidence that manifest injustice would result if the support award were not

---

[6]     *Trihub*, 173 P.3d at 420 (citing *Beaudoin*, 24 P.3d at 526).

[7]     *Id.* (citing *Spott v. Spott*, 17 P.3d 52, 55 (Alaska 2001)).

[8]     *Zimin v. Zimin*, 837 P.2d 118, 124 (Alaska 1992) (quoting *Tobeluk v. Lind*, 589 P.2d 873, 878 (Alaska 1979)).

[9]     *See Powell v. Powell*, 194 P.3d 364, 368 (Alaska 2008) (citing *Trihub*, 173 P.3d at 420).

[10]     Alaska R. Civ. P. 90.3 cmt. VI.A.  "The commentary to Civil Rule 90.3 has not been officially adopted, but it can provide useful guidance in applying the rule." *Miller v. Clough*, 165 P.3d 594, 599 n.10 (Alaska 2007) (citing *Caldwell v. State*, 105 P.3d 570, 573 n.6 (Alaska 2005)).

varied."[11] Additionally Rule 90.3(c)(2) provides in some situations that when a parent's adjusted annual income exceeds $105,000, "the court may make an additional award only if it is just and proper, taking into account the needs of the children, the standard of living of the children and the extent to which that standard should reflect the supporting parent's ability to pay."[12]

The exceptions listed in Rule 90.3(c) are not exclusive.[13] In *Epperson v. Epperson* we noted that "the good cause exception [is] not limited to the specific exceptions enumerated in the rule."[14] We further explained that "good cause exists . . . when the formula produces an award which substantially exceeds or falls short of the amount needed to provide for the child's reasonable needs."[15] But we also cautioned that a court may vary the award only if clear and convincing evidence proves applying the normal formula would result in manifest injustice.[16]

Eggener insists that the proper evidentiary standard under Rule 90.3(c)(1) for an enhanced support award was not met here. Eggener argues courts are required to base child support awards on a child's needs and each parent's financial ability to meet those needs. Yet the court in this case, Eggener claims, "focused almost exclusively" on Eggener's wealth in making its decision and failed to address the costs associated with

---

[11]    Alaska R. Civ. P. 90.3(c)(1).

[12]    Alaska R. Civ. P. 90.3(c)(2).

[13]    Alaska R. Civ. P. 90.3 cmt. VI.A; *see also Epperson v. Epperson*, 835 P.2d 451, 453 (Alaska 1992) (internal citation omitted).

[14]    835 P.2d at 453.

[15]    *Id.*

[16]    *Id.*

the child's needs and Wee's ability to contribute to those costs. Eggener also asserts that because a portion of Wee's child support calculations are based on speculation about their son's future, such as the opportunity to travel, have tutors, attend private school, learn a foreign language, enroll in arts and crafts classes, and participate in extracurricular activities, those expenses cannot be included in Eggener's current child support obligation.

Wee responds that the trial court properly deviated from a Rule 90.3(b) child support calculation because Eggener's high income and large financial estate provide both good cause and unusual circumstances. Wee argues Eggener's situation allows for deviation under both Rule 90.3(c)(1) and (c)(2). Wee points out the court increased Eggener's monthly child support obligation by only $300, enabling the child to consistently attend one childcare facility.[17] Wee also argues the court appropriately ordered Eggener to pay the child's health insurance costs and the first $5,000 of uncovered medical expenses under Rule 90.3(d)(1) and (2) due to the parties' financial circumstances.

The court justified its child support award by finding Eggener's wealth and other reasons stated by Wee provided "good cause to vary from a Civil Rule 90.3(b) calculation . . . ." Relying on *Richmond v. Richmond*, Eggener acknowledges that to determine a child support obligation a court must assess the child's needs, "the relative financial ability of the parents to meet [those] needs," and "whether the relative financial abilities justify placing a greater burden on one parent and a lesser burden on the other."[18] Here the court's $300 increase in Eggener's monthly child support obligation

---

[17]    *See* note 2, above.

[18]    779 P.2d 1211, 1216 (Alaska 1989) (describing the steps to determine a
(continued...)

accounts for specific childcare needs, expressly recognizing Eggener's ability (and implicitly recognizing Wee's relative inability) to meet those needs. The trial court appropriately weighed the child's needs and each parent's financial ability to meet those needs. Based on the record before us, clear and convincing evidence supports the trial court's award. We therefore conclude the trial court did not abuse its discretion in ordering Eggener to pay an additional $300 per month in child support, and we do not need to address whether the trial court used an incorrect evidentiary standard.[19]

## B.      Attorney's Fees

Although Eggener and Wee were not married, the trial court awarded Wee attorney's fees under AS 25.24.140(a)(1), the "divorce exception" to Rule 82.[20] Under AS 25.24.140(a)(1) a court may award "attorney fees and costs that reasonably approximate the actual fees and costs required to prosecute or defend the action."[21] This ensures parties in a divorce-like action " 'have the proper means to litigate . . . on a fairly

---

[18]      (...continued)
child support award), *disapproved of on other grounds in Hansen v. Hansen*, 119 P.3d 1005, 1010 n.16 (Alaska 2005); *see also* Alaska R. Civ. P. 90.3(c)(1) (mandating the court "consider the custodial parent's income" when applying Rule 90.3(c)(1)'s good cause exception).

[19]      Eggener did not articulate his challenge to the court's order concerning health insurance and uncovered medical expenses under Rule 90.3(d), and the issue is therefore waived. *See State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 528 (Alaska 1980) (citing *Lewis v. State*, 469 P.2d 689, 691-92 n.2 (Alaska 1970)) ("Failure to argue a point constitutes an abandonment of it.").

[20]      *See Koller*, 71 P.3d at 808-09 (reviewing the divorce exception and applying it in an action closely resembling a divorce). Neither party challenges the court's reliance on AS 25.24.140(a)(1).

[21]      AS 25.24.140(a)(1).

equal plane.' "[22] An attorney's fees award under the statute is " 'not to be based on the prevailing party concept,' " as such actions rarely produce a prevailing party.[23] Rather, courts may award attorney's fees based " 'on the relative economic situations and earning powers of the parties.' "[24] Therefore, parties "in comparable economic situations" generally are responsible for their own attorney's fees.[25]

Eggener recognizes that AS 25.24.140(a) applies to determining attorney's fees in this case and that its purpose is to ensure the parties litigate on level economic ground. He asserts, however, that the court "is limited to awarding an amount necessary to enable the recipient to prosecute or defend the suit." Eggener claims Wee had sufficient funds to litigate the case, and "[b]oth parties were very well represented by counsel and experts . . . ." Eggener argues the court abused its discretion by "bas[ing] its decision solely on the economic status of the parties rather than all the other factors in the case." Eggener describes Wee's litigation position, seeking primary physical and sole legal custody of their son, as unreasonable.[26] Eggener concludes by asserting it is against public policy to order "the parent who is financially better off to bear the burden of the other parent's unreasonable litigation position."

---

[22] *Rodvik v. Rodvik*, 151 P.3d 338, 351 (Alaska 2006) (quoting *Lone Wolf v. Lone Wolf*, 741 P.2d 1187, 1192 (Alaska 1987)).

[23] *Id.* (quoting *Lone Wolf*, 741 P.2d at 1192); *Trihub*, 173 P.3d at 429 (quoting *Koller*, 71 P.3d at 808).

[24] *Rodvik*, 151 P.3d at 351 (quoting *Lone Wolf*, 741 P.2d at 1192); *see also Sanders*, 12 P.3d at 768 (quoting *Kowalski v. Kowalski*, 806 P.2d 1368, 1372 (Alaska 1991)).

[25] *Edelman v. Edelman*, 61 P.3d 1, 5 (Alaska 2002) (citing *Nicholson v. Wolfe*, 974 P.2d 417, 427 (Alaska 1999)).

[26] We note that Eggener sought the same relief in his complaint.

Wee responds that the trial court properly awarded her attorney's fees based on the parties' relative financial situations and earning capacities. She asserts that Eggener's net worth is sixty times her net worth and that while working full-time she "will earn approximately nine times less than" Eggener's annual earnings even though he is retired. Wee concludes by arguing "she was not placed on a level playing field with Mr. Eggener," claiming Eggener's litigation expenses far exceeded her own.

The trial court granted Wee's motion for attorney's fees primarily based on "the vast financial disparity between the parties," as well as the reasonableness of the requested fees. In *Koller v. Reft* we held that AS 25.24.140(a)(1) attorney's fees awarded against a father were justified by "[t]he disparate economic situations and earning capacities of the parties . . . ."[27] In that case the father's annual net income was about $60,000 and the mother's was less than $10,000.[28] The father also possessed "a sizable bank account and the skills to earn a significantly higher income than [the mother]."[29] In *Kelly v. Kelly* we similarly affirmed an attorney's fees award where one spouse's "employment [had] been sporadic and significantly less remunerative" and the other spouse earned over $60,000 a year.[30] We held, without further discussion, that the attorney's fees award was not an abuse of discretion because it "accurately recognize[d] the substantial disparity between the earning capacity and economic situations of the

---

[27]     71 P.3d at 809.

[28]     *Id.*

[29]     *Id.*

[30]     926 P.2d 1168, 1168, 1170 (Alaska 1996).

parties."[31]

In light of our precedent, Eggener's argument that the trial court used an improper standard or otherwise abused its discretion by basing the attorney's fees award on the parties' disparate financial situations is unpersuasive. Wee might have had adequate funds to pay her own litigation expenses, but that alone does not establish the court abused its discretion by ordering Eggener to reimburse Wee for a large portion of her expenses. Eggener and Wee are not in comparable economic or earning situations, and the court had broad discretion to award attorney's fees to Wee, the "economically less advantaged . . . litigant," to ameliorate the significant depletion of her resources due to litigation.[32] We therefore conclude the court did not abuse its discretion in awarding attorney's fees to Wee.

## V. CONCLUSION

The trial court's child support and attorney's fees orders are AFFIRMED.

---

[31] *Id*. at 1170.

[32] *Hilliker v. Hilliker*, 828 P.2d 1205, 1206 (Alaska 1992) (citing *Johnson v. Johnson*, 564 P.2d 71, 76-77 (Alaska 1977)).