*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| CHRISTOPHER D., | ) | |
| | ) | Supreme Court Nos. S-16586/16626 |
| Appellant and | ) | |
| Cross-Appellee, | ) | Superior Court No. 4FA-14-01381 CI |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| KRISLYN D., | ) | No. 7303 – September 21, 2018 |
| | ) | |
| Appellee and | ) | |
| Cross-Appellant. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Michael P. McConahy, Judge.

Appearances: Margaret O'Toole Rogers, Foster & Rogers, LLC, Fairbanks, for Appellant and Cross-Appellee. Daniel L. Callahan, Callahan Law Office, Fairbanks, for Appellee and Cross-Appellant.

Before: Stowers, Chief Justice, Winfree, Maassen, and Bolger, Justices. [Carney, Justice, not participating.]

MAASSEN, Justice.

## I.    INTRODUCTION

Following a protracted custody dispute, the superior court awarded the mother primary physical custody of a couple's two children and ordered the father to pay child support. Both parents appeal. The father contends that the superior court abused

its discretion when it refused to vary his child support obligation pursuant to the "good cause" exception of Alaska Civil Rule 90.3(c)(1), given the parents' disparate incomes and the expenses the father was incurring to comply with conditions on his visitation. The mother contends that the superior court erred in setting the child support order's effective date.

We conclude that the superior court did not abuse its discretion by denying a "good cause" variance because the evidence did not support it. But it was error not to expressly consider child support for the period between the parties' separation and the order's effective date. We remand the child support issue for further proceedings consistent with this opinion.

## II.    FACTS AND PROCEEDINGS

Christopher D. and Krislyn D. were married in 1996 and have two minor children.[1]  Christopher was a city police officer and Krislyn was a veterinarian who owned her own practice. The couple separated in January 2014 after Christopher allegedly committed an act of domestic violence while under the influence of alcohol. In February Krislyn filed a complaint for legal separation, which was later converted to a divorce. Both her complaint and Christopher's answer asked that child support be set pursuant to Alaska Civil Rule 90.3. The superior court approved an interim custody schedule by which Krislyn had custody of the children 9 of every 14 nights on an alternating two-week schedule. Neither party pursued a request for child support until the custody trial over two years later.

Christopher resigned from the police force in August 2014, and the parties briefly reconciled. But in November they separated again, this time for good, following another alleged incident of domestic violence fueled by alcohol.

---

[1]    We use initials to protect the parties' privacy.

In January 2015 Christopher was arrested for driving under the influence and possessing a firearm while intoxicated. In the divorce case the court approved the parties' stipulation to a temporary custody order which, among other things, reestablished the alternating two-week custody schedule, prohibited Christopher from driving with the children, and required him to submit to blood alcohol testing at Krislyn's request. A custody investigation was delayed because of Christopher's pending criminal charges, which in turn delayed the trial.

The parties settled their property issues in October 2015, but permanent custody remained to be decided. A few weeks later Christopher was arrested for driving under the influence, reckless endangerment, violating conditions of release, and resisting arrest, and Krislyn moved for modification of the temporary custody order. The court granted her motion in December: its order granted Krislyn sole legal and physical custody, conditioned Christopher's contact with the children on his wearing an ankle monitor, and required that his visitation be supervised by a third party. Christopher sought treatment for substance abuse and in March 2016 graduated successfully from a chemical dependency program. He wore the ankle monitor as required for visitation and continued with therapy. His pending criminal charges were ultimately resolved by a plea agreement.

A custody trial was scheduled for November 2016. Krislyn asked for child support effective November 1, 2015, the month after entry of the property settlement and divorce decree, on grounds that "[p]rior to entry of the Decree of Divorce, there was an informal interim financial arrangement . . . regarding on-going joint expenses such as . . . child support," and the decree "settled any potential claim by either party in regard to interim financial matters, including child support." Christopher asked that his child support obligation be waived pursuant to the "good cause" exception of Civil

Rule 90.3(c)(1), citing the disparity between his income and Krislyn's and the ongoing expenses of his therapy and the court-ordered conditions on visitation.

In December 2016 the superior court issued written findings of fact and conclusions of law, a custody decree, and a child support order. The court adopted the parties' agreement that Krislyn continue to have sole legal and primary physical custody. It found that Christopher had successfully maintained sobriety for at least six months, but it approved his proposals — also recommended by the custody investigator — that he continue to engage in "an after-care program regarding his alcohol abuse and addiction," complete a parenting class, undergo a psychological evaluation and follow all its recommendations, and keep Krislyn informed of his progress in all these areas. But the court released Christopher from both the ankle-monitor condition on contact with the children and the third-party supervision requirement, allowing his father and his significant other to act as visitation supervisors.

The court also ordered Christopher to pay child support pursuant to the formula of Civil Rule 90.3. The court denied Christopher's request for a variance, concluding that "[d]isparity of earning potential does not, in this case, obviate the need for support to be calculated pursuant to Civil Rule 90.3." The child support order provided that Christopher's payments were to commence the next month, on January 1, 2017.

Both parties timely appealed. Christopher challenges the superior court's refusal to apply a variance to his child support obligation to reflect his ongoing expenses and the parties' disparity of income. Krislyn challenges the court's selection of the child support order's effective date.

## III. STANDARD OF REVIEW

" '[W]e reverse child support awards only if the superior court abused its discretion or applied an incorrect legal standard,' or if 'its factual findings are clearly erroneous.' "[2] "A superior court abuses its discretion by making a decision that is arbitrary, capricious, manifestly unreasonable, or . . . stem[s] from an improper motive."[3] "Abuse of discretion occurs when a trial court fails to consider statutorily mandated factors, weighs factors improperly, or includes improper factors in its decision."[4]

"We review de novo the trial court's determination of the inception date for a child support obligation."[5]

## IV. DISCUSSION

### A. The Superior Court Did Not Abuse Its Discretion By Declining To Vary Christopher's Child Support Obligation Pursuant To The "Good Cause" Exception Of Civil Rule 90.3(c)(1).

Christopher contends that the superior court abused its discretion when it refused to vary his child support obligation pursuant to the "good cause" exception of Civil Rule 90.3(c)(1). In support of this argument he contends that Krislyn's earning capacity — which he asserts is over twenty times his own — "is more than adequate by itself to provide for the children's needs"; that the amount he is required to pay under the child support order therefore "significantly exceeds the amount of the children's

---

[2] *Mitchell v. Mitchell*, 370 P.3d 1070, 1076 (Alaska 2016) (footnote omitted) (first quoting *Koller v. Reft*, 71 P.3d 800, 804 (Alaska 2003); and then quoting *Limeres v. Limeres*, 320 P.3d 291, 296 (Alaska 2014)).

[3] *Sharpe v. Sharpe*, 366 P.3d 66, 68 (Alaska 2016) (alterations in original) (quoting *Morris v. Horn*, 219 P.3d 198, 203-04 (Alaska 2009)).

[4] *Ruppe v. Ruppe*, 358 P.3d 1284, 1289 (Alaska 2015) (quoting *Michele M. v. Richard R.*, 177 P.3d 830, 834 (Alaska 2008)).

[5] *Skinner v. Hagberg*, 183 P.3d 486, 488-89 (Alaska 2008).

reasonable needs"; and that his contribution "provides little more than a token benefit to the children."  Christopher further asserts that the substance abuse aftercare, parenting classes, and other court-ordered visitation conditions "cost a substantial investment of both time and money" and that he cannot afford to pay child support while also bearing these costs and the expenses of daily living.

"The superior court may vary a support award calculated under Rule 90.3 only 'for good cause upon proof by clear and convincing evidence that manifest injustice would result if the support award were not varied.' "[6]  "Good cause may include a finding that unusual circumstances exist which require variation of the award in order to award an amount of support which is just and proper for the parties to contribute toward the nurture and education of their children."[7]  To justify a good cause variation, a finding of unusual circumstances must be followed by a finding that "these unusual circumstances make application of the usual formula unjust."[8]

We conclude that the superior court did not abuse its discretion when it found that the parties' disparity in income did not justify a good cause variation.  We observed in *Laughlin v. Laughlin* that "[i]t is not unusual for one spouse to have a greater income than the other."[9]  The disparity in *Laughlin* was much less dramatic than it is

---

[6]    *Berkbigler v. Berkbigler*, 921 P.2d 628, 631 (Alaska 1996) (quoting Alaska R. Civ. P. 90.3(c)(1)); *see also* Alaska R. Civ. P. 90.3 cmt. I.C. ("The support guidelines in the rule may be varied only as provided by paragraph (c) of the rule.").

[7]    Alaska R. Civ. P. 90.3(c)(1).

[8]    Alaska R. Civ. P. 90.3 cmt. VI.B.

[9]    229 P.3d 1002, 1006 (Alaska 2010).

here, however;[10] assuming, therefore, that this case presents "unusual circumstances" because of the parties' respective incomes, the question remains whether "these unusual circumstances make application of the usual formula unjust."[11]

First, that Krislyn can afford to support the children on her own, while relevant to a good cause determination,[12] does not by itself excuse Christopher's own obligation to contribute.[13] "Rule 90.3 provides the presumptive formula for calculating a non-custodial parent's child support obligation."[14] One "expectation" of the rule is that increases in the parents' income will result in corresponding increases in the amount available to spend on the children; "[t]hus, at least in the primary custodial situation, the contribution of one parent does not affect the obligation of the other parent."[15] Both continue to contribute a certain percentage of their income even as their incomes vary.

---

[10]    *See id.* at n.17 (noting that mother's income was approximately $67,000 and father's was approximately $32,000).

[11]    Alaska R. Civ. P. 90.3 cmt. VI.B.

[12]    Alaska R. Civ. P. 90.3(c)(1) ("The court shall consider the custodial parent's income in this determination.").

[13]    *Maloney v. Maloney*, 969 P.2d 1148, 1152 (Alaska 1998) ("[N]on-custodial parents should not be relieved of their child support obligations simply because custodial parents can afford to maintain their children.").

[14]    *Morris v. Horn*, 219 P.3d 198, 205 n.28 (Alaska 2009); *see also* Alaska R. Civ. P. 90.3 cmt. I.B ("[T]he guidelines presumptively apply to all child support awards . . . .").

[15]    Alaska R. Civ. P. 90.3 cmt. II.

Even a "token benefit" from the non-custodial parent serves to recognize that "[e]very parent has a duty to support his or her child."[16]

Christopher's argument hinges not only on Krislyn's ability to support the children on her own but also his inability to help because of his debts and expenses. He points to the "substantial investment of both time and money" he is required to make in counseling and classes in order to comply with the court-imposed conditions on visitation. But it was Christopher's burden to demonstrate good cause by clear and convincing evidence.[17] "We do not intend that the [good cause] exception become the rule."[18] And the fact that a party "has significant debts does not, by itself, mean that the award amount should be reduced."[19]

Christopher first raised the issue of a good cause variance in his pretrial memorandum, in which he asserted that he was "required to take several classes, engage in counseling, and pay for supervised visitation" such that "[h]e cannot afford the $763 per month" child support obligation calculated under Rule 90.3(a). He did not elaborate on the actual costs of these requirements. He reasserted the argument at trial, testifying that he was engaged in therapy and had started the classes recommended by the custody

---

[16]    Alaska R. Civ. P. 90.3 cmt. I.B; *see Kestner v. Clark*, 182 P.3d 1117, 1123 (Alaska 2008) ("As we have repeatedly recognized, a parent should not be relieved of the obligation to support his or her children except under the most extreme circumstances.").

[17]    *See* Alaska R. Civ. P. 90.3(c)(1).

[18]    *Coats v. Finn*, 779 P.2d 775, 777-78 (Alaska 1989).

[19]    *Berkbigler v. Berkbigler*, 921 P.2d 628, 631 (Alaska 1996); *see* Alaska R. Civ. P. 90.3 cmt. VI.B.4 ("Prior or subsequent debts of the obligor, even if substantial, normally will not justify a reduction in support.").

investigator. But he again failed to present any evidence of the costs of these activities. In closing argument he asserted that he was paying $500 per month for ankle monitoring services and $1,300 per month for a visitation supervisor, but the superior court eliminated these two expenses in its custody decree by recognizing Christopher's progress, terminating the ankle monitor requirement, and authorizing Christopher's father or significant other to supervise visitation. All that remains in the record now are Christopher's conclusory statements that his unspecified expenses are sufficient to constitute good cause for a variance. This falls far short of the "clear and convincing evidence" necessary to show "that manifest injustice would result if the support award were not varied."[20]

We conclude that the superior court did not abuse its discretion when it denied the request for a good cause variance.

B. **The Superior Court's Selection Of January 1, 2017 As The Effective Date For Christopher's Child Support Obligation, Without Explanation, Was Error.**

In its December 2016 findings of fact and conclusions of law, the superior court determined that Christopher's child support obligation would be calculated on the basis of his child support guidelines affidavit filed in November 2016; the accompanying child support order required the first monthly payment to be made on January 1, 2017. Krislyn argues that the court erred by selecting this effective date instead of "November 1, 2015, the first month following entry of the property settlement and

---

[20] Alaska R. Civ. P. 90.3(c)(1); *see McDonald v. Trihub*, 173 P.3d 416, 428-29 (Alaska 2007) (affirming superior court's refusal to find good cause for variance in father's claimed disability, where father "failed to offer sufficient evidence, through further evidence of his medical disability or of his personal financial straits, that . . . manifest injustice would result in his case.").

Decree of Divorce." She contends that any claim for child support before that date was "extinguished" by the parties' settlement of their respective financial claims.

Christopher defends the order's January 2017 effective date. He contends that the parties' "informal financial arrangements" reflect their "understanding that interim child support would not be paid by either party"; that Krislyn "waived entitlement to interim child support" by agreeing to the property settlement agreement in October 2015 that was silent on child support; that Krislyn's request is unfairly retroactive; and that given these facts — along with the parties' "relative personal and financial circumstances," Christopher's court-ordered costs, and the late timing of Krislyn's request — it was within the superior court's discretion to decline to award child support for past periods.

We conclude that neither parent's argument is correct, and that the superior court must revisit the issue of child support for the entire interim period between separation and January 1, 2017, the effective date of the existing order.

The obligation of parents to support their children "begins . . . on the date the parents stop living together";[21] "[t]his duty exists even in the absence of a court order of support."[22] We have repeatedly recognized that child support should be calculated from the date of separation.[23] Here, the superior court found in its October 2015 findings

---

[21]     Alaska R. Civ. P. 90.3 cmt. I.B.

[22]     *Matthews v. Matthews*, 739 P.2d 1298, 1299 (Alaska 1987); *see also* *Vachon v. Pugliese*, 931 P.2d 371, 382 (Alaska 1996) ("[A]bsent extraordinary circumstances, courts should apply the calculation methodology of Rule 90.3 to determine amounts to be reimbursed to custodial parents for support of children during periods not covered by support orders.").

[23]     *See, e.g.*, *Spott v. Spott*, 17 P.3d 52, 54 (Alaska 2001) ("[The parent] owed back child support for the period not covered by the interim order — from the date of
(continued...)

of fact and conclusions of law that "[t]he parties separated in November of 2014"; though arguing for different effective dates, neither party appears to challenge the court's finding of when they separated.

Contrary to Christopher's characterization of it, calculating child support from the date of separation is not impermissibly retroactive. "The rule against retroactive modification . . . only prohibits modifying 'arrearage' already due under a 'final child support award' in existence when a motion to modify is filed."[24] When there is no child support order covering the relevant time period, applying the methodology of Rule 90.3 "does not modify an existing arrearage."[25] Indeed, "[p]recluding a retroactive award would create an incentive . . . to avoid . . . child support obligations for some period of time by delaying the process . . . . The creation of such an incentive would, of course, run counter to the statutory purpose of providing for the needs of children . . . ."[26]

We must also reject Christopher's arguments that Krislyn waived interim child support by entering into other "informal financial arrangements" with him or by failing to address the issue in the parties' 2015 property settlement agreement, as well

---

[23] (...continued) separation until December 1, 1995."); *State, Dep't of Revenue, Child Support Enf't Div. v. Pealatere*, 996 P.2d 84, 88 (Alaska 2000) ("The trial court, however, failed to calculate the amount of back child support from the date of separation."); *Ogard v. Ogard*, 808 P.2d 815, 816 (Alaska 1991) ("[The parent] clearly owed some amount of child support beginning with the date of separation.").

[24] *Duffus v. Duffus*, 72 P.3d 313, 320 (Alaska 2003).

[25] *Crayton v. Crayton*, 944 P.2d 487, 490 (Alaska 1997) (quoting *Vachon*, 931 P.2d at 382).

[26] *State, Dep't of Revenue, Child Support Enf't Div., ex rel. Hawthorne v. Rios*, 938 P.2d 1013, 1015 (Alaska 1997) (quoting *Cyrus v. Mondesir*, 515 A.2d 736, 738-39 (D.C. 1986)).

as Krislyn's assumption that the settlement agreement resolved any earlier child support claims. "[N]o parental agreement regarding child support is valid until it receives judicial scrutiny under Rule 90.3."[27] From this rule follows a corollary: "a custodial parent's conduct cannot amount to an estoppel or waiver altering the obligation to pay child support."[28]

As explained above in section IV.A, the superior court does have discretion to vary an award "for good cause upon proof by clear and convincing evidence that manifest injustice would result if the support award were not varied."[29] Christopher suggests reasons why the court may have decided to apply the "good cause" variance to any obligation he had to pay child support before January 1, 2017. But any variance must be explained. "The court must specify in writing the reason for the variation, the amount of support which would have been required but for the variation, and the estimated value of any property conveyed instead of support calculated under the other provisions of [Rule 90.3]."[30] The failure to "issue written reasons for deviating from the guidelines" is error.[31]

For these reasons we remand the child support order for the superior court's explicit consideration of the unaddressed period between legal separation and January 1, 2017, the effective date of the existing order. Because support is being calculated

---

[27] *Laughlin v. Laughlin*, 229 P.3d 1002, 1005 (Alaska 2010) (quoting *Nix v. Nix*, 855 P.2d 1332, 1334 (Alaska 1993)).

[28] *Paxton v. Gavlak*, 100 P.3d 7, 13 (Alaska 2004) (quoting *Rios*, 938 P.2d at 1017 n.8)).

[29] Alaska R. Civ. P. 90.3(c)(1).

[30] *Id.*

[31] *Boone v. Boone*, 960 P.2d 579, 584 (Alaska 1998).

retrospectively rather than prospectively, "actual income rather than earlier predictions as to income should be used" to set the amounts due.[32]

This decision is not intended to restrict the parties' ability to mutually agree on support arrearages and seek judicial approval of their agreement, nor is it intended to limit the superior court's discretion to vary the support obligation as required to prevent "manifest injustice" pursuant to Rule 90.3(c)(1).

## V.    CONCLUSION

We AFFIRM that aspect of the superior court's child support order that applies prospectively. We REMAND the order to the superior court for explicit consideration of child support for the interim period between the parties' separation and January 1, 2017.

---

[32]    *Spott v. Spott*, 17 P.3d 52, 56 (Alaska 2001).